HOLLISTER LAW CORPORATION
GEORGE C. HOLLISTER, State Bar No. 137706
655 University Ave, Ste. 200
Sacramento, CA 95825
(916) 488-3400 (Telephone)
(916) 488-3401 (Facsimile)
mramjet@ix.netcom.com (E-mail)

Attorney for Official Committee of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
(SACRAMENTO DIVISION)

In re:

CAL STATE GROWTH FUND,

        Debtor.

Case No. 11-30626-A-11

Motion No. HLC-2

**MOTION FOR APPOINTMENT OF CHAPTER 11 TRUSTEE**

Hearing Date: 12/12/11
Time: 10:00 a.m.
Dept: "A" (Courtroom 28)
U.S. Federal Courthouse
501 I Street, 7th Floor
Sacramento, CA 95814

        The "Official Committee of Unsecured Creditors" (the "Committee") hereby respectfully seeks the appointment of a Chapter 11 Trustee for cause shown, including incompetence and gross mismanagement of the affairs of the debtor by current management. This motion (the "Motion") is made with reference to the following facts which are corroborated by the accompanying Declaration of Barbara McCrory (the "McCrory Declaration") and the separate Declaration of Dean Brown (the "Brown Declaration"):

        1.    On April 29, 2011, (the "Petition Date"), Debtor Cal State Growth Fund ("Debtor") filed a voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code.

2.     Also on April 29, 2011, Debtor's loan servicer, Cal State Home Loans, Inc. ("CSHL"), an affiliate Cal State Mortgage Co., Inc. ("CSM"), Debtor's President, Alexander Gomez ("Gomez") and Debtor's chief financial officer (Secretary/Treasurer) Monica Rabena ("Rabena") also filed individually for bankruptcy protection with this Court as follows:

  a. CSHL filed Chapter 11 case #11-30628;

  b. CSM filed Chapter 11 Case #11-30629;[1]

  c. Gomez filed Chapter 7 Case #11-30799;

  d. Rabena filed Chapter 7 Case #11-30801.

3.     The Committee was appointed in Debtor's case on June 17, 2011, pursuant to 11 U.S.C. §§1102(a) and 1102(b)(1), by the Office of the U.S. Trustee ("OUST").

4.     At all times since the Petition Date the Debtor has been co-managed by Gomez and Rabena who, according to the Debtor's response to question 21 of its Statement of Financial Affairs filed May 20, 2010 (the "SoFA"), are Debtor's President, Director and a 39% shareholder of the Debtor (Gomez) and Debtor's Secretary, Treasurer, Director and a 51% shareholder of the Debtor (Rabena).

5.     In their separate bankruptcy disclosures, Gomez and Rabena admit in their Schedules "B" (Personal Property), in response to line item #13 (Stocks and Interests in incorporated and unincorporated businesses) that in addition to their respective shares in the Debtor as described above, they also own the majority of the shares of the following affiliated entities:

  a. CSHL: 64% (Gomez) and 26% (Rabena);

  b. CSM: 64% (Gomez) and 26% (Rabena);

  c. Professional Trust Deed Services, Inc. ("PTDS"): 39% (Gomez) and 51% (Rabena).

6.     Gomez and Rabena also disclose in their respective Schedules I (monthly income) that their employer is CSHL (Rabena identifying herself as "bookkeeper" earning

---

[1] While the Civil Minutes entered September 2, 2011 (Case #11-30629, docket entry #77) indicate that the Court granted the Debtor's motion to convert the case to Chapter 7, no order converting the case appears to have been entered and this case remains a Chapter 11 filing.

$7,404 gross per month, and Gomez identifying himself as "president" being paid $5,464 monthly);

7.     Gomez and Rabena further disclose in response to question #1 of their Statement of Financial Affair (the "SoFA") that they earned $106,613 and $120,972 respectively in 2010 from employment income;

8.     Gomez testified at the June 3, 2011, first meeting of creditors (the "CSGF First Meeting") that that neither he nor Rabena receive any "compensation or salary" from the Debtor and that other than the nominal sum of $90, neither he nor Rabena have received "any compensation or salary" from the Debtor in the past year (at Minute 35:10 to 35:56);

9.     Gomez further testified during the CSGF First Meeting that the Debtor was forced into bankruptcy due to litigation pending in the Santa Clara County Superior Court (hereinafter referenced as the "Bernstein Litigation") between Debtor, CSHL, CSM, Gomez and Rabena (collectively the "Cal State Defendants") on the one hand (among others), and an investor group consisting of Philip Bernstein and others (collectively "Bernstein") (See response to question #4 of the SoFA), which the Cal State Defendants wished to stay.

10.     Gomez also testified that CSHL serviced approximately $6.5 million in loans owned by Debtor, in addition to loans owned by private clients;

11.     This Court lifted the automatic stay over the Debtor's objection to permit Bernstein to proceed to trial against Debtor (See order entered September 7, 2011, at Docket #113), CSM (9/7/2011, Docket #79) and CSHL (9/7/2011, Docket #96) and Rabena (8/16/2011 - Docket #42) in the State Court and a trial has been scheduled for January 17, 2012.

12.     A draft outline of a Plan was circulated to the Creditor Committee by Debtor on October 28, 2011, but no plan has been filed either in this case or in any of the affiliated Chapter 11 cases.

13.     The Creditor Committee will not support confirmation of the proposed draft Plan.  The draft Plan is unacceptable to the Creditor Committee since it provides for the continued retention of current management which for the reasons set forth below, the Creditor Committee believes is not in the best interests of creditors.

14.     Monthly Operating Reports ("MORs") have been filed by the Debtor, for the most part in a timely fashion, but are deficient in the following respects:

a. The July, 2011, MOR bank statement shows a check for $2,000 as a payment to Minden Computers Stockton for computer expense. CSGF does not own any computers.

b. The August, 2011, MOR has a charge for $2,487 for consulting fees. No consultants have been approved by the Court. The bank statements shows this was check #2644 Corporate in the amount of $2,487 was paid to Guy Puccio. Debtor has been requested to state what services were performed. No answer has been received.

c. The September, 2011, MOR has payments for $255 from each of the five funds totaling $1,275 labeled "Accounting to Iacopi, Lenz & Company" which is a CPA firm which previously prepared income tax returns for CSGF and CSHL. No CPA firm has been approved by the Court. Debtor has been requested to state what services were performed. No answer has been received.

d. The bank reconciliation attached to the September, 2011, MOR for Fund V shows an inter-fund transfer dated 10/5/2011 of $21,718.33 to Fund 1 and $16,288.76 to Fund III. There is no corresponding entry to either Fund 1 or III. It is unknown why the accounting entries were not made at the tiem of the transfer. Debtor states Fund V bought the interests of Fund I and III in a foreclosed property. Fund I and III benefited by receiving full cash value for their interest in this property. Fund V now has a five year purchase option lease with the same individual who defaulted on the loan. Debtor's management's reasoning that "this also simplified future accounting issues that might occur thru receipt of rental income" is not to the benefit of Fund V which has now assumed all the risk instead of its original 30% interest in the property.

15. In addition to the foregoing discrepancies, the MORs reflect what appears to be self-dealing by Gomez and Rabena through their capacities as officers, directors and shareholders of the Debtor and CSHL. Notwithstanding the representations that CSGF does not pay Gomez' and Rabena's salaries, the MORs reflect that CSGF is reimbursing CSHL's payroll in addition to paying loan servicing fees and other unauthorized expenses as follows:

     a.     May, 2011:     $5,525.50 ("CSHL P/R Reimb") + $12,315.13 (Loan Servicing Fee);

     b.     June, 2011:     $13,175.52 ("CSHL P/R Reimb") + $9,180.30 (Loan Servicing Fee);

     c.     July, 2011:     $ 7,825.52 ("CSHL P/R Reimb") + $10,364.87 (Loan Servicing Fee);

     d.     August, 2011:     $5,600 ("CSHL P/R Reimb") + $11,434.07 (Loan Servicing Fee) + $2,487 ("Consulting Fees");

     e.     September, 2011:     $7,825.50 ("CSHL P/R Reimb") + $10,074.18 (Loan Servicing Fee) + $1,275 ("Accounting")

16.     The Creditor Committee has met and conferred on an ongoing basis with the Debtor to (1) obtain explanations for the discrepancies referenced above, (2) request a stipulation that CSHL be replaced with a competent, less expensive servicing agent (see accompanying Declaration of Dean Brown), and (3) obtain assurances that the Debtor's management is not engaged in self-dealing.

17.     Not only has the Committee not received a satisfactory response to these requests, but the responses which have been received indicate a grave and immediate threat of loss exists. Specifically, while the Committee was advised by both Gomez and Rabena at a site inspection undertaken July 20, 2011 - attended by the full Committee and their counsel and by David Johnston, Debtor's counsel – that neither the Debtor nor CSHL could make new loans without violating applicable regulatory law, the Committee discovered last week that at least one new loan has been originated. The Committee's repeatedly requests for assurances that no laws are being broken have been met with silence.

18.     As confirmed in the McCrory Declaration, assuming all of the Debtor's receivables are disbursed monthly by a Chapter 11 Trustee, and that those receivables are approximately $60,000 (i.e., slightly more than what the Debtor currently reports in its latest operating report), then his or her maximum fee by statute would be approximately $6,500 for the first month (25% of the first $5000 ($1,250) plus 10% of the next $45,000 ($4,500), plus 5% in excess of that ($750)) and then $3,000 per month thereafter up to $1,000,000, and then 3% thereafter or $1,800 per month. (11 U.S.C. §326(a)). This amount essentially replaces CSHL

management which ranges from a low of approximately $5,250 to approximately $13,175. In addition to that, there are the savings resulting from the 1.5% reduction in the loan service fee which fees will drop to approximately $5,000 per month from the approximate $9,000 to $12,000 per month charged by CSHL.

19. Having received no satisfactory response its requests for explanation and action as referenced above, the Creditor Committee brings the subject motion in order to dispossess current management with a Chapter 11 Trustee.

Reference is made to the accompanying memorandum of points and authorities for a demonstration of why the appointment of a Chapter 11 Trustee is appropriate under the circumstances and applicable law.

WHEREFORE, the Creditor's Committee requests that the Court grant the motion and order the immediate appointment of a Chapter 11 Trustee.

Dated: November 14, 2011

HOLLISTER LAW CORPORATION

BY: GEORGE C. HOLLISTER
Attorneys for the Official Committee of Unsecured Creditors